IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MELISSA D. HELMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:06-CV-6036-NKL |
| ) | |
| EXPRESS PHARMACY SERVICES OF ) | |
| MISSOURI, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Melissa Helms ("Helms") is a former employee of Defendant Express Pharmacy Services of Missouri, Inc. ("PharmaCare").[1] At the time of her resignation, Helms signed a Separation Agreement and General Release ("Agreement") in which PharmaCare agreed to provide certain benefits to Helms in exchange for Helms releasing all claims she may have against the company. Helms claims that PharmaCare materially breached the terms of the Agreement. As a result, Helms brought this cause of action against PharmaCare in which she claims that PharmaCare subjected her to a hostile work environment, discriminated against her on the basis of her gender and disability, and failed to pay her as required by the Equal Pay Act. Pending before the Court is

---

[1] PharmaCare notes that its correct name is Express Pharmacy Services of MO, Inc., not Express Pharmacy Services of Missouri, Inc.

1

PharmaCare's Motion for Summary Judgment [Doc. # 55]. For the reasons set forth herein, PharmaCare's Motion is granted.

**I.     Facts**

Melissa Helms was a Loss Prevention Supervisor at PharmaCare's Kansas City pharmaceutical mail order facility. On May 2, 2005, Helms's supervisor indicated that Helms was not performing at the level necessary for a Loss Prevention Supervisor. The supervisor gave her three options: (1) accept a demotion to a security guard position, (2) maintain her current position but with an agreed upon performance plan, or (3) resign. Two days later, Helms gave her supervisor two-weeks' notice that she intended to resign.

At her May 18 exit interview, Helms agreed to a severance package and signed the Separation Agreement and General Release. Pursuant to the Agreement, Helms immediately began a six week severance period during which PharmaCare paid her $580 per week plus health and dental benefits. (Agreement ¶¶ 4 and 6.) In addition, PharmaCare agreed to pay Helms for any unused vacation time and not to contest her application for unemployment benefits. (Agreement ¶¶ 5 and 8.)

In return, Helms agreed to

> release and forever discharge PharmaCare . . . from any and all manner of causes of action . . . against PharmaCare, whether known or unknown, which You ever had, now have or which You . . . may have prior to the date this Agreement is signed, due to any matter whatsoever relating to Your employment, compensation and benefits and/or termination of Your employment, including but not limited to any claim that PharmaCare violated the National Labor Relations Act, Title VII of the Civil Rights Act of 1964, Sections 1981 through

1988 of Title 42 of the United States Code, . . . the Americans
with Disabilities Act [and/or] the Fair Labor Standards Act . . ..

(Agreement ¶ 9.)

Helms was given 21 days to consider the Agreement before signing it. (Agreement ¶ 13.) She was also given seven days after signing the Agreement to revoke her decision and was encouraged to consult with an attorney prior to executing the Agreement. (Agreement ¶ 13.)

Helms signed the Agreement the day of her exit interview and never revoked it. PharmaCare complied with all of its obligations under the Agreement except that Helms's health insurance was suspended by mistake. Approximately one month later, PharmaCare learned of its error and reinstated Helms's health insurance.

Helms testified at her deposition that she needed medical attention but was unable to receive it because her health insurance had been suspended. Helms testified: "I needed medical attention that I was unable to get because I did not have medical insurance . . . I had to wait until they finally got it reinstated one month later before I could go to the doctor, which left me only two weeks of benefits." (Helms Depo. p. 224.)

**II.     Discussion**

Courts apply general contract principles in determining the validity of a release. *Lancaster v. Buerkle Buick Honda Co.*, 809 F.2d 539, 541 (8th Cir. 1987) (applying "ordinary contract principles" to validity of ADEA release). One such principle is that the scope of the contract is determined by the parties' intent when they signed it. *Joe v. First Bank Sys., Inc.*, 202 F.3d 1067, 1070 (8th Cir. 2000). Another general contract

3

principle as applied to a release-of-claims case requires any release to have been knowingly and voluntarily given in exchange for adequate consideration. *Lancaster*, 809 F.2d at 541; *Warnebold v. Union Pac. R.R.*, 963 F.2d 222, 223-224 (8th Cir. 1992). Finally, under Missouri law,[2] the Court must enforce a contract according to the plain meaning of its words if the contract is clear and unambiguous. *Farmland Indus., Inc. v. Frazier-Parrott Commodities*, 111 F.3d 588, 590 (8th Cir. 1997).

In this case, the Agreement is clear and unambiguous. By signing the Agreement, Helms released PharmaCare from any and all causes of action related to her "employment, compensation and benefits and/or termination." (Agreement ¶ 9.) In consideration for her release, PharmaCare agreed to give Helms $580.00 per week and to continue her health and dental insurance through the six week severance period. PharmaCare also agreed to pay Helms for any unused vacation and not to contest Helms's application for unemployment compensation benefits. Helms was given sufficient time to consider the Agreement (21 days) and to revoke it after signing (7 days). And, Helms was encouraged to seek the advice of legal counsel before executing the Agreement.

Helms does not dispute that she signed the Agreement, nor does she argue that the Agreement is invalid. Instead, she argues that she may bring her previously-released claims against the company because PharmaCare materially breached the Agreement by

---

[2]State law governs questions regarding contract interpretation, enforcement and validity. *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *O'Donnell v. St. Luke's Episcopal Presbyterian Hospitals*, 800 F.2d 739, 740 (8th Cir. 1986) (holding that "substantive contractual rights of parties are governed by the law of the state where the contract is made, performed, and where the transactions thereunder occurred").

4

not providing her health insurance throughout the severance period.[3] *Schaefer v. Rivers*, 965 S.W.2d 954, 958 (Mo. Ct. App. 1998) ("A material breach in a contract may excuse the other party's performance.").

If PharmaCare materially breached the Agreement, then Helms may rescind it and bring her lawsuit against PharmaCare. *Curt Ogden Equip. Co. v. Murphy Leasing Co.*, 895 S.W.2d 604, 609 (Mo. Ct. App. 1995). On the other hand, if PharmaCare breached the Agreement, but the breach is not material, then Helms may only sue for damages. *Id.* Materiality is normally a question of fact, but if the breach is *de minimis*, "the trial court may determine that the breach does not destroy the purpose or the value of the contract and is not material as a matter of law." *Id.*

In this case, Helms argues that PharmaCare materially breached the Agreement by failing to pay her medical benefits during the six week severance period. Specifically, Helms testified that she was without health insurance for the first month of the severance period. For its part, PharmaCare admits that Helms's benefits were suspended by mistake, but insists the benefits were reinstated as soon as the error was discovered. PharmaCare also asserts that Helms was never harmed by the lapse in coverage and that all of Helms's insurance claims during the severance period were eventually covered. Though Helms argues that the lapse in coverage "caused undue hardship on her and prevented her from obtaining necessary medication and treatment for her condition"

---

[3] In her complaint, Helms also argued that PharmaCare breached the Agreement by contesting her application for unemployment benefits. Helms has since abandoned the argument: "Clearly, from a review of the records, the employer, in fact, did not fight her application for unemployment." (Helms Brief at 10.)

5

(Opp. at 10), she has submitted no evidence that she was actually injured as a result of the delay of her medical treatment, or that she was unable to get the medical treatment she needed because her benefits were truncated.

Given this record, the Court finds as a matter of law that PharmaCare's failure to provide health insurance benefits for the entirety of the severance period was not a material breach because PharmaCare's breach of the Agreement did not destroy the purpose or the value of the contract. As a result, the Agreement's provisions, including Helms's release of all claims against PharmaCare, are still in effect.[4] Therefore, PharmaCare's Motion for Summary Judgment is granted.

## III. Conclusion

Accordingly, it is hereby

ORDERED that PharmaCare's Motion for Summary Judgment [Doc. # 55] is GRANTED.

                                                        s/ Nanette K. Laughrey
                                                        NANETTE K. LAUGHREY
                                                        United States District Judge

Dated: February 16, 2007
Jefferson City, Missouri

---

[4] Helms also argues that she was constructively discharged from her position with PharmaCare. Constructive discharge occurs when an employee resigns "after the employer has created an intolerable working environment in a deliberate attempt to compel such a resignation." *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 706 (8th Cir. 2005). The Court need not determine whether Helms was constructively discharged because, even if she was, Helms executed the Agreement releasing all claims against PharmaCare after the date when constructive discharge would have occurred.